```
                      UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS


                                   )
GMAC MORTGAGE, LLC,                )
                                   )
                    Plaintiff,     )
                                   )
          v.                       )       CIVIL ACTION
                                   )       NO. 12-10180-WGY
FIRST AMERICAN TITLE INSURANCE     )
COMPANY,                           )
                                   )
                    Defendant.     )
```

ORDER OF CERTIFICATION

YOUNG, D.J.                                       February 28, 2012

I.  **INTRODUCTION**

Along the interface between the general law of insurance (statutory and decisional) in Massachusetts and that specialized type of insurance known as title insurance, there are a number of questions of first impression.  These questions are of significant import today due to the mortgage meltdown.

GMAC Mortgage, LLC ("GMAC") sued First American Title Insurance Company ("First American") claiming that, because First American chose to cure a certain title defect by filing an action, it was obligated to defend GMAC against all related claims.

On February 10, 2012, this Court held that in the unique circumstances presented by the title insurance policy, First

American was not obligated to pay for the defense of the related claims not covered under the title insurance policy.  GMAC Mortgage, LLC v. First Am. Title Ins. Co., Civil Action No. 12-10180-WGY (D. Mass. Feb. 10, 2012).

This decision resolved an issue of first impression at the trial level.

## II.  PRIOR PROCEEDINGS

After holding a bench trial, the Court found the following facts.  In 2001, Mr. Thomas E. Moore ("Mr. Moore") and his wife, Elizabeth A. Moore ("Mrs. Moore") resided at 2 Country Lane, Billerica, Massachusetts (the "Property"), title of which was held solely in the name of Mr. Moore.  Findings and Rulings 2:16-20, GMAC Mortgage, Civil Action No. 12-10180-WGY (D. Mass. Feb. 10, 2012).  Mr. Moore refinanced the Property through GMAC's predecessor, GN Mortgage Corporation.  Id. at 2:20-22.  The transaction provided that Mr. Moore would execute a note and a mortgage on the Property, then convey the Property from himself to himself and Mrs. Moore as tenants by the entirety.  Id. at 3:3-7.  Mr. Moore was to sign both the note and mortgage while Mrs. Moore was to sign only the mortgage.  Id. at 3:8-10.

At the closing, GMAC's attorney, acting concurrently as agent for First American, issued a 1992 standard American Land

2

Title Association ("ALTA") policy of title insurance (the "Policy") to GMAC from First American.[1]  Id. at 3:11-19.

GMAC's attorney made two significant errors in executing mortgages however.  First, Mrs. Moore never signed the mortgage.  Id. at 4:4-6.  Second, the deed and mortgage were recorded in reverse order.  Id. at 4:6-9.  That is, the deed from Mr. Moore to Mr. and Mrs. Moore as tenants by the entirety was recorded first, then the attorney recorded the mortgage, thus subordinating the mortgage in the chain of title to the Moores' title as tenants by the entirety.  Id. at 4:9-13.

In 2007, Mr. Moore died and by operation of the property laws of the Commonwealth of Massachusetts, sole title to the Property vested in Mrs. Moore - title superior to that of the mortgagee, GMAC.  Id. at 4:14-18.  Mrs. Moore, acting in good faith, continued to make the mortgage payments, totaling approximately $44,000, until she eventually defaulted.  Id. at 4:19-24.

GMAC began foreclosure proceedings against the Property in 2009.  Id. at 5:1-4.  At this time, GMAC neither held good title to the Property, as title was vested solely in Mrs. Moore, nor did it have any clear right to repayment of the underlying note,

---

[1] Title insurance, more akin to a good than a service, requires a one time payment and insures that the financial institution that extends significant funds to a borrower has good title to the property used to secure its loan.  Id. at 3:19-4:3.

3

as the statute of limitations had long since expired to collect on the note following Mr. Moore's death.[2]

When GMAC was made aware of the defect in the title, it made demand for a defense on First American. Id. at 6:6-7. First American determined that it was liable under the Policy for the defect in title. Id. at 6:6-11.

Under the Policy, First American could pursue one of three options to resolve the defect in title. First American could (1) negotiate with the property owner, Mrs. Moore, to resolve the title defect at First American's cost, Policy of Title Insurance, First American Title Insurance Company, No. 100640675 MAL ("Policy") § 6(b)(i); (2) negotiate with GMAC to assume title then take such actions as it thought fit at First American's

---

[2] The spectacle of banks exercising such economic power without any supporting documentation is, unfortunately, not a rare occurrence. See, e.g., Office of the Assessor-Recorder, Foreclosure in California: A Crisis of Compliance (San Francisco, Feb. 2012), available at http://www.sfassessor.org/modules/showdocument.aspx?documentid=1018. As this Court remarked in dicta in delivering its findings and rulings:
> [GMAC's foreclosure attorneys] started foreclosure proceedings on a note that the statute of limitations precluded, a note and a mortgage, I should say, that the law precluded from enforcement. If ever there was a case that emphasized the need that one initiating foreclosure proceedings possess both the note, a valid note, and the mortgage, this case is it. In this case, GMAC had neither. We'll see ultimately what the Supreme Judicial Court has to say about this in the Eaton case. But this case cries out for a rule that one who initiates foreclosure proceedings possess both a valid note and a mortgage.

Findings and Rulings 5:18-6:3.

4

cost, Policy § 6(b)(ii); or (3) initiate litigation to remedy the defect in title, Policy § 4(b).

First American chose the third option and filed suit in the Land Court of the Commonwealth of Massachusetts, seeking an equitable remedy to reform the title or equitably to subrogate Mrs. Moore's interest in the property to the GMAC mortgage. Id. at 7:9-13. Mrs. Moore then initiated suit in the Superior Court of the Commonwealth of Massachusetts raising three claims of: 1) intentional infliction of emotional distress; (2) money had and received, for the mortgage payments she made but now claimed were made in error; and (3) violation of Massachusetts General Laws, Chapter 93A by the alleged unfair and deceptive acts of GMAC's foreclosure attorneys in initiating foreclosure proceedings. Id. at 7:23-8:7. While these claims were effectively counterclaims to GMAC's Land Court action, jurisdictional restrictions prevented her from raising these claims in that action. The Land Court claim was transferred to the Superior Court and consolidated with Mrs. Moore's action. Id. at 8:8-12. The Superior Court case was then removed to the United States District Court and assigned to this Court. Id. at 8:25-9:1. GMAC and First American settled with Mrs. Moore on the first day of trial. Id. at 12:4-6.

**III. BACKGROUND**

In Massachusetts, the obligation to defend is broader than the obligation to indemnify. Thus, when there is an overlap to some extent between one or more of the counts of a complaint with the terms of an insurance policy, the insurer is obligated to defend the insured. The duty to defend the action exists even if the judgment on the ultimate claim is one which the insurer is not obligated to indemnify. It is the general rule of Massachusetts, and several other jurisdictions, that when covered claims are "inextricably intertwined" with other claims, the insurer has an obligation to defend. Nashua Corp. v. Liberty Mut. Ins. Co., No. Civ. A. 94-2227A, 1997 WL 89163, at *10 (Mass. Sup. Ct. Feb. 18, 1997) (Fabricant, J.) ("[A] duty to defend arising from a particular claim or count of a complaint compels the insurer to defend the insured against the entire complaint."); see Oscar W. Larson Co. v. United Capitol Ins. Co., 845 F. Supp. 458, 460 (N.D. Mich. 1993) ("The Court determines that under Michigan law an insurer's duty to defend arises when an insured tenders to its insurer its defense to a claim that is potentially covered by the policy."); Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 333 (E.D. Pa. 1991) (finding a duty to defend because the claim potentially was covered by the policy and the pursuit of the counterclaims was inextricably intertwined with the defense), rev'd in part on other grounds, 961 F.3d 204 (3d Cir. 1992) (table decision); see

6

also <u>TIG Ins. Co.</u> v. <u>Nobel Learning Communities, Inc.</u>, No. Civ. A. 01-4709, 2002 WL 1340332, at *9 (E.D. Pa. June 18, 2002) (quoting <u>Safeguard</u>). This is sometimes called the "in for one, in for all" rule. Joyce D. Palomar, 1 Title Ins. Law § 11:2 (2011).

### A. The Parties' Proposed Constructions

GMAC and First American dispute whether under Massachusetts law and the terms of the Policy, First American is obligated to defend GMAC against the three claims brought by Mrs. Moore.

#### 1. GMAC

The Policy states that First American shall, at its own cost, have the right to pursue any action or proceeding to cure the title. Policy § 4(b). GMAC argues that First American had a variety of contractual options to cure the title defect and, by choosing to litigate, First American assumed the duty to defend GMAC against the reasonably foreseeable claims of Mrs. Moore.

Further, once litigation was undertaken, the claims made by Mrs. Moore against GMAC were inextricably intertwined with the claim to cure the title defect. Accordingly, GMAC contends that under Massachusetts law, First American had a duty to defend GMAC from those claims that were related to and arose under the Policy.

#### 2. First American

First American contends that it had no duty to defend GMAC against Mrs. Moore's claims because the plain language of the Policy explicitly states that First American will defend the insured only against certain claims:

> [First American] shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy.

Policy § 4(a). First American notes correctly that the cases presented developing the "in for one, in for all" Massachusetts law all involve general liability insurance policies. Accordingly, First American argues that such decisional law does not apply to a title insurance policy case.

## IV. THIS COURT'S CONSTRUCTION

This Court held that First American is not obligated to pay for the defense of the related claims not covered under the Policy. Id. at 18:8-11.

Because of the differences between title insurance and general liability insurance, this Court interpreted the contract in accordance with its plain terms, and did not apply the general liability insurance "in for one, in for all" rule. Having in mind the economic situation in which those terms came into play and the objective and reasonable expectations given to those terms by the parties to the contract, this Court held that although the claims were inextricably intertwined, and related to

8

the title defect, id. at 15:19-21, they were not covered under the title insurance contract, id. at 16:18-23.

## V. ORDER FOR CERTIFICATION

Because the outcome of this case hinges on the interpretation of Massachusetts law and there are no controlling precedents in the decisions of the Supreme Judicial Court of Massachusetts, this Court respectfully certifies the following questions to the Supreme Judicial Court of Massachusetts pursuant to its Rule 1:03:

1. Under Massachusetts law, when there is an overlap between one or more of the counts of the complaint and the terms of this standard title insurance policy, does the insurer have a duty to defend the insured against all claims in the action?

2. Under Massachusetts law, when a title insurance contract gives the insurer the right to engage in litigation to cure a defect covered by the policy, does an insurer initiating litigation have a duty to defend the insured against all reasonably foreseeable counterclaims?

This Court of course welcomes the advice of the Supreme Judicial Court of Massachusetts on any other questions of Massachusetts law deemed material to this case.

The Clerk will transmit this question and copies of the record,[3] briefs, and appendices in this case to the Supreme

---

[3] As a matter of judicial economy the Court's decision was rendered from the bench and it is this somewhat unpolished recitation that is submitted herewith. The Court certainly intends no disrespect with such unpolished submittal and, upon notice from the Supreme Judicial Court, will promptly prepare a

9

Judicial Court of Massachusetts.

This case will remain administratively closed and proceedings stayed until responses to the certified questions are received from the Supreme Judicial Court.

SO ORDERED.

                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE

---

full opinion.